# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1259
_____

Joseph Michael Stephen

*Petitioner - Appellant*

v.

Cornell Smith

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 15, 2020
Filed: June 26, 2020

_____

Before KELLY, MELLOY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Joseph Michael Stephen filed a petition for habeas corpus under 28 U.S.C. § 2254 challenging his three Iowa methamphetamine-related convictions. He argues that the evidence for two of his convictions was insufficient under the Fourteenth Amendment's Due Process Clause, his trial counsel were ineffective, the State

violated *Brady v. Maryland*, 373 U.S. 83 (1963), and his sentence violated the Fifth and Eighth Amendments. The district court[1] denied his petition. We affirm.

I.

In April 2009, Des Moines Police Officer Paul Parizek stopped a pickup truck with a burned-out license plate light. He could see through the back window that the passenger, Stephen, was shifting around. Officer Parizek exited his car and approached the passenger side of the truck, when he saw Stephen turn toward his seatbelt buckle "[l]ike, he was stuffing something into the seats." D.Ct. Dkt. 13-1 at 135. Officer Parizek knocked on the window, took Stephen's and the driver's identification, and asked the driver to exit the truck so he could show him the license plate light. He then asked to search the truck and the driver consented.

Officer Parizek asked Stephen to step out of the truck and if he could pat him down. Stephen agreed and turned over a pocketknife. During the pat down, Officer Parizek felt what seemed to be a plastic baggie in Stephen's pocket. He reached into his pocket and found a baggie containing a small amount of methamphetamine. Officer Parizek placed Stephen under arrest and, at this point, or shortly after, Stephen stated he "knew he was going to go to prison." *Id.* at 163.

Officer Parizek then searched the truck. In between the seats where Stephen's attention had been focused during the stop he found two Ziploc bags—one containing a significant amount of crushed pseudoephedrine and the other stripped lithium batteries. On the passenger side floorboard, he discovered a plastic bag containing a fume mask. On the bench seat, he found a pair of channel lock pliers. And in the bed of the truck, he found plastic pitchers, coffee filters, and a modified propane tank.

---

[1] The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

The State charged Stephen with conspiracy to manufacture methamphetamine (Count I), possession of lithium with intent to use it in the manufacture of methamphetamine (Count II), possession of anhydrous ammonia with intent to use it in the manufacture of methamphetamine (Count III), and possession of methamphetamine (Count IV). Stephen's trial was initially set for July 2009 but the State dropped the charges because the federal government was prosecuting Stephen, and the case was dismissed without prejudice. The State later re-filed the charges and Stephen's trial was set for October 2009. A few weeks before trial, his attorney, Rachel Seymour, withdrew from the case and the court appointed Kent Balduchi.

At trial, the jury convicted Stephen on everything but Count III (the anhydrous ammonia offense), and the court sentenced him to 60 years in prison. In calculating the sentence, the court applied both Iowa's habitual offender enhancement, Iowa Code § 902.9(1)(c), and the second or subsequent offense enhancement, Iowa Code § 124.411. The Iowa Court of Appeals affirmed Stephen's convictions on direct review, *State v. Stephen* (*Stephen I*), 2011 WL 5393453 (Iowa Ct. App. Nov. 9, 2011), and the Iowa Supreme Court denied further relief. Stephen then sought state post-conviction relief, which was denied by the trial court and the Iowa Court of Appeals. *State v. Stephen* (*Stephen II*), 2016 WL 3556367 (Iowa Ct. App. June 29, 2016) (unpublished).

Stephen then filed a petition for habeas corpus under 28 U.S.C. § 2254, and later filed a supplemental amended petition. The district court denied Stephen's petition, *Stephen v. Smith* (*Stephen III*), 2019 WL 8219405 (S.D. Iowa Jan. 25, 2019), but issued a certificate of appealability for each of his claims.

II.

The Anti-Terrorism and Effective Death Penalty Act provides two avenues for habeas relief for claims a state court decided on the merits. A petitioner can show the

decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). "Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted," and we cannot consider them unless the petitioner can show "cause and prejudice or that he is actually innocent of the charges." *Skillicorn v. Luebbers*, 475 F.3d 965, 976–77 (8th Cir. 2007) (citations omitted). "When reviewing a district court's denial of a § 2254 petition, we review the district court's findings of fact for clear error and its conclusions of law de novo." *Kennell v. Dormire*, 873 F.3d 637, 639 (8th Cir. 2017).

## A.

Stephen first argues that his conviction for conspiracy to manufacture methamphetamine violated the Fourteenth Amendment's Due Process Clause because the State failed to prove two elements of his offense beyond a reasonable doubt. He contends the State showed only that he was merely present in the truck—not that: (1) he "agreed with [the driver] that one or both of them would manufacture or attempt to manufacture methamphetamine," or (2) he "entered into such an agreement with the intent to promote or facilitate the manufacture of methamphetamine." *Stephen I*, 2011 WL 5393453, *6 (listing the elements of the offense). He claims he is entitled to habeas relief because "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324.

But Stephen's burden is even higher than that. Under AEDPA, he must show the Iowa court's application of "the *Jackson* sufficiency of the evidence standard [was] 'both incorrect *and* unreasonable.'" *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011) (emphasis in original) (citation omitted). A state court's decision is

-4-

reasonable "'so long as fairminded jurists could disagree' on the correctness of the . . . decision." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (citation omitted).

Stephen has not met this burden. A juror could find that Stephen's unusual movements during the traffic stop, stuffing methamphetamine ingredients in between the seats, and his admission that he was "going to jail" showed that the batteries and pseudoephedrine were his. The other items commonly used in the production of methamphetamine in plain view and in the back of the truck suggest that the driver also had knowledge of and control over parts of a rolling meth lab. We therefore agree with the district court that a reasonable juror might infer an agreement between Stephen and the driver from this evidence—or at least "fairminded jurists could disagree" about it. *Harrington*, 562 U.S. at 100.

Stephen's challenges to the state court's factual findings also fail. He argues that Officer Parizek's testimony about him stuffing items between the seats is implausible because no officer would leave a suspect alone next to incriminating evidence. He also contends that it was unreasonable to conclude that the pseudoephedrine and batteries belonged to him because they were within the driver's reach. But Stephen cannot carry his burden by pointing to "some contrary evidence in the record." *Cole v. Roper*, 783 F.3d 707, 711 (8th Cir. 2015). AEDPA requires we give "the state trial court substantial deference" in this area. *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (citing 28 U.S.C. § 2254(d)(2)). We presume the court's factual findings are correct unless Stephen "rebut[s] the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011). He has not done so. His arguments do not clearly show that Officer's Parizek's testimony was false or that the pseudophedrine and batteries belonged to the driver.

B.

Stephen next argues that his conviction for possession of lithium with intent to manufacture methamphetamine violated the Fourteenth Amendment because the State failed to prove that offense beyond a reasonable doubt. We need not reach this claim because it is procedurally defaulted.

"We review *de novo* the question whether [a] claim is procedurally defaulted." *Kemp v. Kelly*, 924 F.3d 489, 499 (8th Cir. 2019). "[We] will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). On direct review, the Iowa Court of Appeals refused to consider whether the evidence for the lithium possession conviction was sufficient because Stephen had not raised this argument in his motion for judgment of acquittal. *Stephen I*, 2011 WL 5393453, at *8, *8 n.3. We may not reach this claim either unless Stephen "shows cause and prejudice or that he is actually innocent of the charges." *Skillicorn*, 475 F.3d at 976. Stephen "makes no attempt to meet [these] standards," so this claim was properly dismissed. *Morgan v. Javois*, 744 F.3d 535, 539 (8th Cir. 2013).

C.

Stephen next claims that his counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating *Strickland* claims, we ask whether "counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000). If we answer either question in the negative, "we need not address the other part of the test." *Id.* "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citation omitted). Establishing that a state court unreasonably applied

*Strickland* under § 2254 is "all the more difficult." *Id.* "When § 2254(d) applies . . . [t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

1.

Stephen first argues that Seymour and Balduchi were ineffective because they did not file a motion to dismiss his second indictment because it violated the Sixth Amendment's[2] speedy trial provision. This argument fails because Stephen did not exhaust it in state court as required by 28 U.S.C. § 2254(b)(1)(A).

To exhaust a federal claim, the petitioner must "present the same facts and legal theories to the state court that he later presents to the federal courts." *Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994). "Mere similarity between the state law claim[] and the federal habeas claim is insufficient." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). In the Iowa Court of Appeals on post-conviction review, Stephen argued only that his counsel were ineffective because they failed to contest the State's violation of Iowa Rule of Criminal Procedure 2.33—Iowa's procedural speedy-trial rule. His state briefing never mentioned the Sixth Amendment or the Constitution, and nearly all of the cases he referenced relate to Rule 2.33. The two Sixth Amendment cases he did cite merely suggest that, like constitutional speedy-trial violations, a violation of Rule 2.33 should result in a dismissal with

---

[2] Stephen's petition also arguably suggested that his counsel failed to argue that the State violated Iowa's procedural speedy-trial rule requiring his trial to be held within 90 days of his indictment absent "good cause." *See* Iowa R. Crim. P. 2.33. But on appeal Stephen only asserts that the State's actions "violat[ed] Stephen's federal right to a speedy trial." Stephen Br. 32. He has therefore forfeited any ineffective assistance argument relating to Iowa's speedy trial rule. *See United States v. Owen*, 854 F.3d 536, 541 n. 5 (8th Cir. 2017) (issue a party chooses not to raise in opening brief is forfeited).

prejudice. In short, Stephen did nothing to put the state court on notice that his claim implicated the Sixth Amendment right to a speedy trial. This claim is therefore unexhausted and, because an application for review or a successive application for post-conviction relief would be untimely, *see* Iowa R. App. P. 6.1103; Iowa Code § 822.3, it is also procedurally defaulted. *See Armstrong v. Iowa*, 418 F.3d 924, 926–27 (8th Cir. 2005). Stephen does not argue that this default should be excused because of cause and prejudice or actual innocence. *Morgan*, 744 F.3d at 539.

2.

Stephen next argues that his attorneys were ineffective for failing to file a motion to suppress the methamphetamine found in his pocket. On post-conviction review, the Iowa Court of Appeals agreed with Stephen that Officer Parizek's seizure of the baggie violated the plain feel exception to Fourth Amendment's warrant requirement under *Minnesota v. Dickerson,* 508 U.S. 366, 373, 375-76 (1993), because the Officer did not testify that it was "immediately apparent" that the baggie was contraband. *Stephen II*, 2016 WL 3556367, at *3–*4. Nevertheless, because Officer Parizek would inevitably have arrested and searched Stephen after finding the batteries and pseudoephedrine, the court held that the evidence would have been admissible, and his attorneys had no duty to make a meritless motion. *Id.* at *4.

Here, Stephen challenges the Iowa Court of Appeals's factual findings, arguing that the record does not show the batteries and pseudoephedrine belonged to him, and so—absent finding the drugs in his pocket—there would have been no reason for Officer Parizek to arrest him. However, there was evidence in the record that showed he owned the batteries and the pseudoephedrine: Officer Parizek testified that he saw Stephen stuffing those items in between the seats. Stephen has not shown that it was unreasonable for the Iowa Court of Appeals to credit this testimony nor has he rebutted it by clear and convincing evidence. We therefore agree that his attorneys were not ineffective in failing to file a meritless motion to suppress.

-8-

3.

Stephen further contends that Balduchi was ineffective because he failed to investigate whether his seatbelt coupler was broken. He argues this finding would have shown he was trying to connect his seatbelt instead of stuffing the batteries and pseudoephedrine between the seats.

Even if Balduchi had found that the seatbelt was broken, however, Stephen's suspicious movements would still have given Officer Parizek reason to search in between the seats and discover the contraband. Also, in light of this evidence it is unlikely a jury would have believed Stephen was more concerned with buckling his seatbelt than with hiding the various components of methamphetamine production all around him. We agree with the state court that Stephen has not shown prejudice from this alleged failing of his counsel and this claim fails. *See Stephen II*, 2016 WL 3556367, at *6; *United States v. Orr*, 636 F.3d 944, 950 (8th Cir. 2011) ("Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result would have been different.").

D.

Stephen next argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose receipts showing the driver had purchased pseudoephedrine prior to Stephen's arrest. The Iowa Court of Appeals rejected this argument because a heading on the scanned receipts indicated that the State had faxed them to Balduchi and they were "found in his file, thus indicating he had [them] prior to trial." *Stephen II*, 2016 WL 3556367, *9. Stephen responds that these findings were unreasonable because the fax numbers show only that the Drug Enforcement Administration sent the document to the Polk County Attorney, and there is no other evidence that it was sent to Stephen's counsel.

We disagree. Not only was there evidence that the receipts were found in Balduchi's file, he conceded that—although he did not remember seeing them—it was "probably likely that [he] did receive [the receipts] from the state in 2009." D.Ct. Dkt. 13-10 at 60. It was not unreasonable for the Iowa Court of Appeals to accept this concession. Nor has Stephen presented clear and convincing evidence rebutting the Iowa Court of Appeals' factual findings.

E.

Finally, Stephen argues the trial court violated the Fifth and Eighth Amendments because it used the same grounds to justify applying both the habitual offender and second or subsequent offense enhancements to his sentence.

Though the Fifth Amendment prevents the "imposi[tion] of multiple punishments for the same offense," our role in evaluating such claims "is strictly cabined." *Dodge v. Robinson*, 625 F.3d 1014, 1018 (8th Cir. 2010) (citation omitted). "[T]he question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Missouri v. Hunter*, 459 U.S. 366 (1983). Moreover, "whether a state legislature intends cumulative punishment . . . is an issue of state law, over which state courts have final authority." *Dodge*, 625 F.3d at 1018.

At least two Iowa appellate courts have held that the Iowa legislature *did* intend the habitual offender and second or subsequent offense enhancements to apply in tandem. On direct review, the Iowa Court of Appeals held that the legislature intended for both enhancements to apply together. *Stephen I*, 2011 WL 5393453, at *14 (citation omitted). The Iowa Supreme Court has also so held. *State v. Sisk*, 577 N.W.2d 414, 416 (Iowa 1998). Because "[w]e are bound by the Iowa courts' interpretation of Iowa law," *Dodge*, 625 F.3d at 1019, Stephen's claim fails.

We decline to consider Stephen's Eighth Amendment claim because it was not exhausted. Petitioners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citation omitted) (petitioner who did not apply for review in the Supreme Court of Iowa did not exhaust his claim). Stephen did not raise his Eighth Amendment claim in his application to the Supreme Court of Iowa on direct review, so he did not satisfy this requirement. Because it would now be futile for him to do so, *see* Iowa R. App. P. 6.1103, this claim is procedurally defaulted. *See Welch*, 616 F.3d at 759–60. Stephen does not contend that this default should be excused because of cause and prejudice or actual innocence. *Morgan*, 744 F.3d at 539.

III.

The judgment of the district court is affirmed.

_____